IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD W. PARKS,                      )
                                       )
          Pro Se Plaintiff,            )
                                       )
     v.                                )     1:06CV524
                                       )
DEERE-HITACHI CONSTRUCTION             )
MACHINERY CORPORATION,                 )
                                       )
          Defendant.                   )

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

Plaintiff Richard W. Parks, who is proceeding pro se, filed a discrimination complaint against his former employer, Deere-Hitachi Construction Machinery Corporation ("Deere-Hitachi"). His complaint was exceedingly brief and merely states:

> The Employer failed to accommadate [sic] me reasonable safe working conditions. Denied me opportunity to replace my prescription stafty [sic] glasses. Then in retaliation, terminated me, for reporting unsafe working conditions.

In the sections where he is required to set forth the jurisdictional basis for his complaint, he does not identify any federal statute, but merely states, "Violation of civil right, denied accommadation [sic]."

Plaintiff had also named the Equal Employment Opportunity Commission ("EEOC") as a Defendant, which filed a motion to dismiss. At the hearing on the motion to dismiss on October 12, 2006, Plaintiff dropped his claims against the EEOC. He also clarified his complaints against Defendant Deere-Hitachi. He claimed he was terminated because of his eyesight disability, in

violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. With respect to his claim of retaliation, he claimed that he was terminated in retaliation for his report of safety concerns to the North Carolina Department of Labor in violation of the Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, et seq. The Defendant has now moved for summary judgment. Plaintiff filed an untimely response.[1]

**Facts**

The evidence in this case consists of Defendant Deere-Hitachi's affidavits and portions of Plaintiff's deposition. The affidavits consist of declarations by Gerald A. Marrow, Human Resources Manager for Defendant, David Goodlin, one of Plaintiff's former supervisors, and Brian Hulin, also one of Plaintiff's former supervisors. Defendant Deere-Hitachi also submitted excerpts of Plaintiff's deposition. These documents show the evidence to be as follows.

Defendant Deere-Hitachi operates a facility in Kernersville, North Carolina, where it manufactures large hydraulic excavators for use in the construction industry. Plaintiff was hired on or about March 21, 2005 as an assembly technician. He had previously

---

[1]Plaintiff's response was due April 2, 2007. For some reason, the Clerk failed to send out the "pro se letter" informing Plaintiff of his right to respond until June 29, 2007. (Docket No. 28.) However, Plaintiff's response was dated and filed on August 9, 2007, which would be untimely even from the June 29, 2007 date. See LR 56.1(d)(a party opposing a motion for summary judgment must file a responsive brief within 30 days). Moreover, the response actually seems to concern another case, i.e., 1:07CV00371, or at least to confuse that case with the instant case. For example, he speaks about a disability concerning his back and that he has been fired from several jobs. In any event, the submission is conclusory and for the most part, irrelevant to the instant lawsuit.

-2-

worked a few months for Defendant through a temporary agency. Plaintiff's job consisted of assembling parts of large hydraulic excavators. From March 2005 through November, his primary supervisor was Brian Hulin. During this time, he had altercations with Brandon Beck, a co-worker. There were also problems with Plaintiff wanting to perform the job his way, rather than using Defendant's processes. Brian Hulin gave Plaintiff a number of coaching sessions on November 1, 2005 because of his poor performance during the previous days.

On that day, Plaintiff was also transferred to the night schedule, where the primary supervisor was David Goodlin. At this job, Plaintiff was to assemble swing motors on excavators. Because of the nature of large equipment, it is essential that all of Defendant's employees adhere to all instructions to ensure safety. This was particularly important because shortly before Plaintiff's transfer, Defendant received its first report of a mechanical failure of an excavator in the field caused by loose bolts on the swing motor. Consequently, on November 4, 2005, a new plan was put into place. Written instructions were given for the various parts being assembled, including those assembled by Plaintiff. They required Plaintiff to tighten every bolt on the swing motor, to torque every bolt, and mark each bolt to verify instructions had been followed.

In addition to written instructions, Defendant also assigned a lead technician, and in Plaintiff's case, it was Sammy Flint who was to supervise employees such as Plaintiff. A lead technician is

responsible for making sure the products are properly assembled. They review the production work to make sure the manufacturing guidelines are being followed. Their orders take precedence to that of other supervisors.

Plaintiff was notified on a number of occasions in February 2006 that he was failing to follow instructions and that bolts were not properly tightened, torqued, and were loose. Furthermore, Plaintiff was not marking all of the bolts as required. Indeed, on the day of his being fired, Plaintiff had totally failed to install a bolt. During these meetings, Plaintiff admitted that he intentionally did not follow either the written or Flint's instructions with respect to tightening bolts. He claimed he had been given different instructions by another supervisor. Mr. Marrow's investigation of the incident showed that this supervisor did not tell Plaintiff that he should not be tightening every bolt and, in any event, Plaintiff was required to follow Flint's instructions because Flint had authority over Plaintiff. On February 21, 2006, Plaintiff was suspended and terminated.

In his deposition, Plaintiff gave a number of different reasons for his termination, including altercations with Brandon Beck (Pl.'s Dep. 41-45, 104), a visit by President Bush resulting in a background check (Pl.'s Dep. 99-100, 104), disagreements with lead technician Sammy Flint (Pl.'s Dep. 90, 104), and the loss of his lunch box containing so-called "safety papers," which he intended to send to the North Carolina Department of Labor (Pl.'s Dep. 109-115.). With respect to his disability, Plaintiff stated

that he was farsighted and without glasses, he could not read things in close proximity to him. However, corrective lenses take care of his problem, he is able to drive with glasses, and he has never been declared legally blind.

With respect to the lunch box incident, Plaintiff stated that he had been given corrective safety glasses by Defendant, which he appreciated. These were in the lunch box one day, allegedly along with papers that Plaintiff was going to submit to the Department of Labor, making some complaint about safety. People were jealous of his glasses because he was the only one that had lenses that would darken in daylight. As it turned out, a co-worker said that he took Plaintiff's lunch box and hid it in the break area, and carried it from one department to another. He denied taking Plaintiff's glasses, but offered to pay to replace Plaintiff's glasses. (Plaintiff's supervisor had given Plaintiff two weeks to replace the glasses on his own.) Plaintiff decided, however, not to report the co-worker. With respect to Plaintiff's claim that someone in management took the lunch box and the documents concerning the labor safety complaint, Plaintiff based this on nothing but speculation. (See Pl.'s Dep. 104-117.) Plaintiff's supervisors and manager deny they had any knowledge of the drawing and diagrams in the lunch box or suspected that Plaintiff ever had or intended to contact the North Carolina Department of Labor.

## Discussion

Defendant Deere-Hitachi has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c). Initially, the moving party

-5-

must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. <u>Catawba Indian Tribe v. South Carolina</u>, 978 F.2d 1334, 1339 (4th Cir. 1992)(en banc). Once this is done, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. <u>Id.</u> This evidence must be beyond a scintilla or merely colorable evidence, or evidence which is not significantly probative. <u>Sylvania Development Corp. v. Calvert County, Md.</u>, 48 F.3d 810 (4th Cir. 1995). The burden is particularly strong where the nonmoving party bears the burden of proof on the issue. <u>Pachaly v. City of Lynchburg</u>, 897 F.2d 723, 725 (4th Cir. 1990). The evidence must be specific and not rest on mere speculation. <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.</u>, 65 F.3d 1113, 1119 (4th Cir. 1995). Further, an issue is not created should the plaintiff give conflicting versions of fact with respect to any issue. <u>Halperin v. Abacus Technology</u>, 128 F.3d 191, 198 (4th Cir. 1997).

### **ADA Claim**

Plaintiff has failed to show any basis for a claim under the ADA. His claim under that Act is that Defendant Deere-Hitachi failed to accommodate him by not giving him an opportunity to replace his prescription safety glasses. Because Plaintiff does not have any direct evidence of discrimination, he must rely on a <u>McDonnell Douglas</u> scheme of proof. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). This test employs a burden-shifting framework and has been held applicable to ADA claims. <u>Ennis v.

-6-

National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55 (4th Cir. 1995). Under the McDonnell Douglas proof scheme, a plaintiff has the initial burden of making a prima facie showing of discrimination by a preponderance of the evidence. If he succeeds, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory explanation which, if believed, would show that discrimination was not the cause of the adverse employment action. Should this occur, any initial presumption drops out of the case and the plaintiff must show that the employer's explanation is not to be believed and is merely a pretext for discrimination. If the plaintiff does not establish a prima facie case or fails to show the employer's explanation of the employment action is a pretext, then summary judgment is appropriate. Id. at 58.

In order to establish a prima facie case in an ADA case where the plaintiff has been discharged:

> a plaintiff must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination, Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; see also Crawford, 37 F.3d at 1341; Smith, 914 F.2d at 1340.

Ennis, 53 F.3d at 58.

The test has also alternatively been described as follows:

> To prove a violation of the ADA, [Plaintiff] must establish that 1) he was disabled, 2) that he was otherwise qualified for his position and 3) that he was fired solely on the basis of disability. 42 U.S.C.A. § 12112; Doe v. Univ. of Maryland Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995); Tyndall v. National Educ. Ctrs., 31 F.3d 209, 212 (4th Cir. 1994).

-7-

Porter v. U.S. Alumoweld Co., Inc., 125 F.3d 243, 246-247 (4th Cir. 1997).

In the instant case, Defendant argues that Plaintiff has not established a prima facie case because the evidence shows that Plaintiff was not meeting Defendant's expectations by failing to follow directions and not torquing and inspecting every bolt. While the Court agrees that Plaintiff has failed to establish a prima facie case, it does not believe that it is appropriate to consider whether the employer's reasons for terminating Plaintiff are correct at the prima facie phase.[2] Moreover, in this case, Plaintiff did admit that he was not torquing the bolts in his deposition, but gave an explanation for it, in that he claims that he was told not to do so by another supervisor. Therefore, the Court cannot find that Plaintiff has, in fact, admitted he was not meeting his employer's legitimate expectations and was not qualified to do the job.

Plaintiff fails to establish a prima facie case for the more basic reason that he cannot show that he was disabled. As stated

---

[2]The Court rejects Defendant's argument that Plaintiff fails to establish a prima facie case because he was not meeting his employer's legitimate expectations. With respect to this factor, it is important not to confuse it with the analysis later, after the plaintiff establishes a prima facie case, which is whether the employer's non-discriminatory, legitimate explanation for the adverse employment action was, in fact, true or not. At the prima facie stage of the proceedings, the plaintiff need only show that he or she could perform the essential functions of the job or could so perform them with reasonable accommodation in an ADA case. Porter v. U.S. Alumoweld Co., Inc., 125 F.3d 243, 247 n.3 (4th Cir. 1997). The Court normally does not look at Defendant's evidence that Plaintiff was not performing adequately at this time.

by the Fourth Circuit in <u>Davis v. University of North Carolina</u>, 263 F.3d 95, 99 (4th Cir. 2001):

> An individual is disabled under the ADA or the Rehabilitation Act if he or she: (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. <u>See</u> 42 U.S.C.A. § 12102(2) (1995); 29 U.S.C.A. § 705(20)(B) (West 1999 & Supp. 2001).

Plaintiff's claims fail because, as pointed out by Defendant, the Supreme Court specifically held in <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 491 (1999): "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." <u>Id.</u> at 482-83. In that case, the Supreme Court concluded that even though severely myopic, the airline pilots were not disabled because their impairments could be corrected by eyeglasses or contact lenses. <u>Id.</u>; <u>see</u> <u>also</u> <u>Myers v. New York City Human Rights Com'n</u>, No. 04 CIV 00543 (JCF), 2006 WL 344754 (S.D.N.Y. Feb. 15, 2006)(the need for tinted eyeglasses did not establish disability).

In the present case, it is clear that Plaintiff's vision problem (farsightedness) is correctable and he is able to drive and do other activities with glasses. He is not substantially limited in any major life activity and, therefore, fails to show that he was within the protected class by being disabled. Therefore, he cannot establish a claim under the ADA, nor establish a prima facie case to support such claim. As a result, the case must be

dismissed at this stage of the proceedings.  The Court need not go on to determine whether the employer has advanced legitimate, non-discriminatory reasons for discharging Plaintiff, although it seems clear from the evidence that the employer has established that as well.

### REDA Claim

Plaintiff's next claim is that he was discharged in retaliation for his reporting unsafe working conditions.  At the October 12, 2006 court hearing, Plaintiff clarified that he was going to report the conditions to the North Carolina Department of Labor.  While Plaintiff did not cite the REDA or any other law, everyone assumed this was his claim.  (See Def.'s Br. Docket No. 27; Pl.'s Dep. 128.) However, he has failed to present any proof that he would come within its provisions.  That Act provides in pertinent part as follows:

> **§ 95-241. Discrimination prohibited**
>
> (a) No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to do any of the following:
>
> > (1) File a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to any of the following:
> >
> > > a. Chapter 97 of the General Statutes.
> > >
> > > b. Article 2A or Article 16 of this Chapter.
> > >
> > > c. Article 2A of Chapter 74 of the General Statutes.
> > >
> > > d. G.S. 95-28.1.

> e. Article 16 of Chapter 127A of the General
> Statutes.
>
> f. G.S. 95-28.1A.

For Plaintiff to state a claim under the REDA, he must show: "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." Wiley v. United Parcel Service, Inc., 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004). Plaintiff did not specify which right under N.C. Gen. Stat. § 95-241(a)(1) he claimed was protected, although it appears that he is claiming protection under the Workers' Compensation Act, N.C. Gen. Stat. § 97-1, et seq. However, there are numerous impediments to Plaintiff proceeding with this claim. First, he must show that he commenced this action within ninety days of receiving a Right to Sue letter. See N.C. Gen. Stat. § 95-243; see also Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 618 S.E.2d 750 (2005). There is some evidence in this case that Plaintiff did file a complaint with the Department of Labor, but it is not clear if or when he ever received a Right to Sue letter, let alone that he filed this action within ninety days of receiving a Right to Sue letter.

Even more importantly, it is not clear that Plaintiff's claim is in connection with the filing of a Workers' Compensation claim, which is a requirement to proceed under N.C. Gen. Stat. § 95-241(a)(1)(A) with respect to discrimination in connection with the

-11-

Workers' Compensation Act.  <u>Whiting</u>, <u>supra</u>.  The REDA was enacted to prevent employer retaliation for workers exercising their rights under the Workers' Compensation Act.  That is why a claim can only arise with respect to or arising out of the filing or contemplated filing of a workers' compensation claim.  <u>Id.</u>  In <u>Whiting</u>, the court found that a claim based on the employer's refusal to pay for medical services was not related to the filing of a workers' compensation claim and, therefore, was not covered by the REDA.  In the instant case, it is not clear that Plaintiff's alleged reporting of safety violations has any relationship to the filing of a workers' compensation claim.  From documents filed by Plaintiff in a discovery motion, it appears he filed his workers' compensation claim on February 26, 2006.  (<u>See</u> Docket No. 15.)  For this reason, Plaintiff's REDA claim is barred.

However, Defendant raises an even more pertinent reason for dismissing the retaliation claim.  The evidence shows that Plaintiff was terminated prior to his reporting the safety violations to the Department of Labor, prior to his filing a workers' compensation claim, and prior to any employer knowledge of either.  (Pl.'s Dep. 128.)  Plaintiff's argument in his deposition (at 114-115 & 117) is that when an employee took his lunch box, the papers in it relating to the safety violations got into management's hands.  However, Plaintiff has presented absolutely no evidence of this and, as stated previously, speculation and conclusions cannot save a plaintiff from a summary judgment dismissal.  Therefore, Plaintiff's REDA claim must be dismissed as well.

-12-

Plaintiff has also filed a paperwriting which he had entitled, "Motion for Discovery." It was filed on March 9, 2007. Discovery, however, closed on March 12, 2007. As Defendant points out, if this were a legitimate request for discovery, is it untimely because it was not filed sufficiently prior to the end of discovery to allow for the normal thirty-day response time to interrogatories or requests for the production of documents. LR 26.1(c). Moreover, discovery requests may not be filed with the Court and would be subject to being stricken. LR 261(B)(3). Finally, it does not even appear that this document requests any information from Defendant, but instead, appears to be directed to the non-party Equal Employment Opportunity Commission. For all these reasons, the motion will be denied.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for discovery (docket no. 23) is denied.

**IT IS FURTHER ORDERED** that Defendant Deere-Hitachi Construction Machinery Corporation's motion for summary judgment (docket no. 26) is granted, and that this action is dismissed.

_____
United States Magistrate Judge

August 17, 2007

-13-